IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEESA JESMER RYAN,

       Plaintiff,

v.                                            CIV 15-0740 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (*Doc. 18*), filed January 19, 2016. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *Doc. 8.* Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court finds the Motion without merit and will deny it.

## I.  Procedural History

On April 20 and 24, 2012, Plaintiff filed applications with the Social Security Administration for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. *Administrative Record* ("*AR*") at 148-157.[1] Plaintiff alleged a disability onset date of June 6, 2009, *AR* at 152, and the disabling conditions of bilateral knee problems, back problems, and diabetes.

---

[1] Documents 16-1 through 16-13 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

*AR* at 180. The agency denied Plaintiff's claims initially and upon reconsideration, and Plaintiff requested a hearing. *AR* at 49-81, 93-95.

After a *de novo* hearing, Administrative Law Judge Myriam Fernandez Rice ("the ALJ") issued an unfavorable decision on February 27, 2014. *AR* at 12-24. Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council declined on July 17, 2015. *AR* at 1-4. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 14. At Step Two, she determined that Plaintiff had the severe impairments of "chondromalacia of the knees, morbid obesity, depression, irritable bowel syndrome (IBS), and mild degenerative disc disease." *AR* at 14. The ALJ also found that Plaintiff has "degenerative disc disease of the cervical and lumbar spine contributing to knee pain

and obesity" and "moderate limitations in concentration due to depression, pain, and medication side effects." *AR* at 14. At Step Three, she concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 15-17.

When a plaintiff does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). *Hendron v. Colvin*, 767 F.3d 951, 953 (10th Cir. 2014). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1). The ALJ in this case determined that Plaintiff maintained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); however, "[d]ue to back and knee pain and obesity, the claimant may only occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; may frequently stoop; may occasionally balance, kneel, crouch and crawl; should avoid concentrated use of moving machinery and exposure to unprotected heights." *AR* at 18. The ALJ also determined that Plaintiff "can understand, remember, and execute simple instructions and tasks in a work environment that is primarily object focused; she can maintain concentration, pace, and persistence for two hours at one time; also included is the ability to work for additional periods of two hours at a time, before and after regularly scheduled breaks, in the morning, lunch, and in the afternoon." *AR* at 18.

Employing this RFC at Steps Four and Five, the ALJ determined that Plaintiff is unable to perform her past relevant work. *AR* at 22. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can

perform; specifically, the ALJ determined that Plaintiff maintains the RFC to work as a dowel inspector, lens inserter, and a nut sorter. *AR* at 23. Accordingly, the ALJ determined that Plaintiff was not disabled from her alleged onset date through the date of her decision and denied benefits. *AR* at 23.

## II.   Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or is actually a mere conclusion. *Slocum v. Sec'y of Health & Human Services*, 9 F.3d 117 (10th Cir. 1993). The Court may not reweigh the evidence, substituting its own discretion for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.   Analysis

### A) The ALJ's RFC Findings are Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC analysis is flawed because it failed to include all of her limitations and omitted a function-by-function analysis. Simply put, the Court disagrees.

1.  Orthopedic Impairments

Plaintiff first argues that the ALJ ignored her orthopedic impairments when formulating her RFC. Specifically, Plaintiff contends that the ALJ should have accepted her subjective complaints of disabling knee, neck and back pain. *Doc. 18* at 9-10.

In determining that Plaintiff can perform a limited range of sedentary work the ALJ relied heavily upon the May 17, 2012, Physical Residual Functional Capacity Assessment completed by Jonathan Norcross, M.D., a state agency medical consultant. *AR* at 18. Dr. Norcross opined that Plaintiff can stand and/or walk at least two hours in an 8-hour workday and sit about six hours. *AR* at 362. This assessment is consistent with the demands of sedentary work. SSR 83-10, 1983 WL 31251 at *5 ("periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday").

Plaintiff points out that Dr. Norcross' Physical Residual Functional Capacity Assessment predated her 2012 bilateral knee surgeries in September (left knee) and November (right knee). However, as the ALJ notes, after her surgeries Plaintiff appeared to be doing significantly better. *See AR* at 19. For example, in October of 2012, after her left knee arthroscopy, Plaintiff reported only a 1/10 on the visual analog pain scale and reported "that she is overall significantly doing better than previously noted." *AR* at 446. Plaintiff reported this same level of pain on her last documented physical therapy session before her surgery on her right knee. *AR* at 443. Although Plaintiff assessed her pain level as between 6-7 about a week after the second surgery,

5

she also indicated that she had gone shopping and stood or walked for more than 4-5 hours just two days after that surgery. *AR* at 518.

Plaintiff followed-up with her surgeon on June 12, 2013. *AR* at 530. At that time Plaintiff reported that her right knee was doing very well but now her left knee was still painful. *AR* at 530. Plaintiff reported that she had difficulty sitting for long periods. *AR* at 530. On examination, Plaintiff had pain with deep knee flexion bending but no pain with full extension. *AR* at 530. Plaintiff's physician recommended that she continue to strengthen her knees and offered injections if there was no improvement. *AR* at 530.

Taken together, no post-surgery medical records indicate any further restriction on Plaintiff's ability to sit, stand and walk than those identified by Dr. Norcross. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) ("there is no medical evidence regarding claimant's knee injury which contradicts the ALJ's conclusion that she retains the capacity to perform light work."). Importantly, none of Plaintiff's medical providers ever limited Plaintiff's use of her knees, and most were of the opinion that further physical therapy and strengthening would only benefit her moving forward.

Turning to Plaintiff's complaints of disabling neck and back pain, substantial evidence supports the ALJ's finding that Plaintiff can sit, stand and walk commensurate with the requirements of sedentary work. First, unlike Plaintiff's knee impairments, Plaintiff's automobile accident (which caused her neck and back pain) occurred on April 22, 2012. *AR* at 371. Thus, any restrictions from this accident were accounted for in Dr. Norcross' Physical Residual Functional Capacity Assessment of May 17, 2012. *AR* at 368. Second, the record is again devoid of any objective medical findings restricting Plaintiff from completing the requirements of sedentary work. As the ALJ notes, on

October 2, 2012, Plaintiff presented to George Baumchen, PA-C with neck and back pain. *AR* at 392. At that time Plaintiff reported that she could only sit for 30 minutes, stand and walk for only 10 minutes, and that she was not working because of her pain, which she rated as a 6-7 out of 10. *AR* at 392. Objectively, however, there was little to support Plaintiff's allegations of disabling pain, apart from some mild tenderness over her SI joints. *AR* at 393-94. Plaintiff was diagnosed with "[s]ix months status post motor vehicle accident with continued soft tissue pain, both cervical pain and back pain." *AR* at 394. Recommended treatment was conservative, consisting of physical therapy, weight loss, and the provision of a home exercise book for Plaintiff's back and neck. *AR* at 394.

Plaintiff complains that the ALJ omitted any discussion of PA-C Baumchen's description of the 2012 x-rays. *Doc. 23* at 3. In that medical record, PA-C Baumchen reported that the "lumbar series are difficult films due to morbid obesity" and that "the disc space at the L5-S1 is very difficult to visualize." *AR* at 394. He went on to "assume" that it was therefore "severely collapsed." *AR* at 394. However, the ALJ did expressly note that a later April 2013 MRI showed only "mild degenerative disc disease" at the L5-S1 location. *AR* at 19 (citing to *AR* at 525).

In light of this evidence, the ALJ was not required to accept Plaintiff's allegations of pain completely precluding her from sitting, standing and walking consistent with the requirements of sedentary work. To the contrary, Plaintiff does not point to any medical evidence indicating that her RFC should be more limited than that found by the ALJ. *See Hodges v. Colvin*, 568 F. App'x 639, 641 (10th Cir. 2014) (unpublished) ("Mr. Hodges does not point to any medical evidence indicating his RFC should be more

limited than that found by the ALJ."). Thus, the ALJ did not err in refusing to fully limit Plaintiff's RFC so as to be consistent with her subjective complaints.

2.  Limitations from Fatigue and Headaches

Plaintiff next argues that the ALJ failed to include in her RFC impairments related to her fatigue and headaches.

Starting with the latter, Plaintiff's argument as to her headaches is both unsupported and unpersuasive. Plaintiff's Motion is devoid of any argument specific to her headaches apart from a section heading, *Doc. 18* at 10, and the Reply merely states that headaches could "cause difficulty with concentration, persistence and pace." *Doc. 23* at 4. Moreover, apart from one instance where Plaintiff represented that she has daily headaches in an agency questionnaire, she has failed to identify a single medical record supporting her position that headaches impair her ability to work. *See Doc. 18* at 10 (citing *AR* at 247); *Doc. 23* at 4; *see also* 20 C.F.R. § 404.1528(a) ("Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment."); *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1499 (10th Cir. 1992) ("No medical evidence supports Claimant's allegations of fatigue; his testimony alone cannot establish a nonexertional impairment."). More importantly, Plaintiff has failed to establish *how* her headaches interfere with her ability to work. In light of this void, the ALJ's failure to consider Plaintiff's headaches in formulating her RFC is harmless. *See Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (unpublished) (finding harmless error where the plaintiff failed to "identify how any of

these conditions, either individually or in combination, affected her functioning during the time she claims she was disabled.").

Turning to her allegations of fatigue, Plaintiff argues that since she has diabetes, and diabetes "can cause fatigue," the ALJ erred by omitting limitations related to fatigue from her RFC. *Doc. 18* at 10. However, Plaintiff admits that the ALJ expressly discussed her diabetes and found it to be a non-severe impairment at Step 2 because it is controlled by medication. *See AR* at 15. In light of this discussion, it is unsurprising that the ALJ decided not to include fatigue as a limitation on Plaintiff's ability to work. *See Mendez v. Colvin*, 588 F. App'x 776, 780 (10th Cir. 2014) (unpublished) ("Although the ALJ did not expressly discuss Mr. Mendez's interim claims of fatigue, those claims were not significantly probative because his symptoms had resolved.").

Substantial evidence also supports the ALJ's decision to discount Plaintiff's allegations that her fatigue rendered her unable to work. An ALJ must evaluate the intensity, persistence, and functionally limiting effects of any claimed symptoms. *See* SSR 96-7p, 1996 WL 374186.[2] "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." *Id.* "Credibility determinations are peculiarly the province of the finder of fact and we will not upset such determinations if they are supported by substantial evidence." *Wall*, 561 F.3d at 1067 (quoted authority omitted).

---

[2] The Court is mindful that effective March 28, 2016, the SSR 96-7p "credibility" analysis was rescinded and was replaced by SSR 16-3p which now controls the "Evaluation of Symptoms" analysis. *See* SSR 16-3p, 2016 WL 1119029. While this decision is "binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(1), the ALJ's decision in this case predated the issuance of SSR 16-3p. The Court therefore applies SSR 96-7p, which was in effect as of the date of the ALJ's decision. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012) (referring to the regulations in effect at the time of the ALJ's decision).

The ALJ determined that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible[.]" *AR* at 18. In discounting Plaintiff's complaints, the ALJ noted that Plaintiff completed a function report in which she claimed that she is in pain most of the time, cannot sit or stand for any length of time, and is "always exhausted." *AR* at 21. The ALJ then discredited Plaintiff's allegations of disabling symptoms in this report on the basis that Plaintiff

> gets kids off to school, does laundry or dishes, reads, watches TV, picks up kids from school, helps kids with homework, helps fix dinner, and gets kids ready for bed. She prepares meals, does dishes daily, and shops in stores once a week for two hours. She needs breaks when doing housework.

*AR* at 21; *see AR* at 208. The ALJ later summarized Plaintiff's testimony, noting that she testified that she "gets up at 11 a.m. or 12 p.m., takes a shower, does a few errands, picks up children from school, lays down from 3:30 to 6:30 p.m., helps with dinner, and goes back to sleep until 10 p.m. Her husband cleans, cooks, and shops." *AR* at 21. Again, the ALJ found that Plaintiff's daily activities undercut her allegations of disabling fatigue: "[t]hough the claimant has limitations, she is still able to drive, run errands, help with meals, and supervise three children." *AR* at 21-22.

The ALJ correctly relied upon Plaintiff's daily activities in discounting her complaints of disabling fatigue. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186 at *3; *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). And Plaintiff's daily activities are not so limited so as to preclude all work. *Compare Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (upholding a negative credibility finding where the

plaintiff's "description of her activities of daily living 'indicated the ability to care for herself, her home and her children.'" The plaintiff was also able to drive, shop, handle finances, garden, visit friends and eat out.). To the contrary, Plaintiff's function report establishes that she cares for her children when they come home from school and provides them with snacks, helps with their homework and gives them their baths. *AR* at 209. Plaintiff also cares for pets. *AR* at 209. She has no problem with personal care, cooks meals three times a week for two hours at a time, does laundry, dishes, dusts, and pays bills without assistance. *AR* at 209-10. Plaintiff also drives, and shops in stores and online for two hours per week. *AR* at 211. Plaintiff reads and watches TV, goes to the movies once a month, and goes to church every other week. *AR* at 212. These activities are roughly equivalent to those at issue in *Wilson* and other Tenth Circuit decisions affirming negative credibility findings on the basis of daily activities. *See, e.g.*, *Giuliano v. Colvin*, 577 F. App'x 859, 862 (10th Cir. 2014) (unpublished) (affirming a negative credibility finding where the plaintiff's daily activities "included caring for her young daughter, maintaining their household, driving her daughter back and forth to school, and attending her daughter's school concerts. She also read to her daughter, watched television, and went to movies, the park, and family functions."); *Rudde v. Astrue*, 253 F. App'x 770, 774 (10th Cir. 2007) (unpublished) (affirming where the claimant was working part time and "was able to perform at least some household chores with the help of her daughter.").

The ALJ's adverse credibility findings as to Plaintiff's fatigue are supported by the record. Substantial evidence thus supports the omission from the RFC assessment of

limitations due to fatigue, *see Alarid v. Colvin*, 590 F. App'x 789, 797 (10th Cir. 2014) (unpublished), and the Court will not reverse the ALJ on this basis.

3. <u>Rejection of Mental Limitations</u>

Plaintiff argues that the ALJ should have included mental health limitations identified by her treating social worker, Margery Runyan, Ph.D., LISW, and erred by attributing Dr. Runyan's opinion little weight. *See Doc. 23* at 5.

Dr. Runyan began counseling Plaintiff after the death of her brother. *AR* at 533 ("Leesa Ryan came to me with intense grief which had manifested as severe depression due to the recent death of her brother[.]"). As of the date of the hearing before the ALJ, Dr. Runyan had treated Plaintiff for four to five months. *AR* at 34. Treatment for the depression consisted of individual psychotherapy and antidepressant medication with "very gradual improvement." *AR* at 539-40. In October 2013, Dr. Runyan diagnosed Plaintiff with major depressive disorder, single episode, severe without psychotic features. *AR* at 537. Among other things, Dr. Runyan found Plaintiff to have moderate limitations in her ability to remember locations and work-like procedures; to make simple work-related decisions; to carry out very short and simple instructions; to sustain an ordinary routine without special supervision; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and, to be aware of normal hazards and take appropriate precautions. *AR* at 540-44. Dr. Runyan also found Plaintiff to have marked limitations in her ability to understand and remember detailed instructions; to work in coordination with or proximity to others without being distracted by them; to complete a normal

workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to travel in unfamiliar places or use public transportation; and, to set realistic goals or make plans independently of others. *AR* at 540-44.

The ALJ contrasted Dr. Runyan's 2013 opinions with those of Louis Wynne, Ph.D., a consultative examiner who examined Plaintiff in December 2012. *AR* at 20. Like Dr. Runyan, Dr. Wynne diagnosed Plaintiff with mood disorder/depression and anxiety due to general medical condition. *AR* at 488. However, Dr. Wynne found that Plaintiff

> can read and understand basic written instructions and her concentration and ability to persist at simple work tasks are unimpaired. She could interact well with the general public, her coworkers, and her supervisors, and she could adapt to changes in the workplace, recognize obvious hazards, and manage her own benefits payments.

*AR* at 488. The ALJ attributed Dr. Wynne's opinion great weight and incorporated his findings into Plaintiff's RFC. *AR* at 20.

Conversely, the ALJ gave little weight to Dr. Runyan's assessment of Plaintiff's limitations. The ALJ reasoned:

> I assign little weight to Dr. Runyan because she has been treating the claimant for only a few months. The claimant's grief and severe depression may be colored by the recent death of her brother. Moreover the marked limitations opined by Dr. Runyan are not supported by the record. For example, other treating sources do not comment about depression, and the claimant engages in activities such as driving and caring for three children.

*AR* at 21. The question is whether the ALJ's stated reasons for affording Dr. Runyan's opinion little weight conforms to the applicable regulations and case law.

"It is the ALJ's duty to give consideration to all the medical opinions in the record." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). "[Sh]e must also discuss the weight [s]he assigns to such opinions." *Id.* (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). The parties agree that Dr. Runyan is not an "acceptable medical source" under the regulations. *Doc. 23* at 5 (admitting that Dr. Runyan is neither a psychiatrist nor a psychologist, but a Licensed Independent Social Worker); *see* 20 C.F.R. § 404.1513(a); SSR 06-03P, 2006 WL 2329939. While not entitled to the same deference as an "acceptable medical source," opinions from these medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Factors to be considered by an ALJ when evaluating an opinion from a provider that does not qualify as an "acceptable medical source" include:

• How long the source has known and how frequently the source has seen the individual;

• How consistent the opinion is with other evidence;

• The degree to which the source presents relevant evidence to support an opinion;

• How well the source explains the opinion;

• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

• Any other factors that tend to support or refute the opinion.

*Id.* at *4-5. "Not every factor for weighing opinion evidence will apply in every case[,]" but, rather, "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." *Id.* at *5. "In the case of a nonacceptable medical source, the ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning." *Fulton v. Colvin*, 631 F. App'x 498, 503–04 (10th Cir. 2015) (unpublished) (quoting *Keyes–Zachary*, 695 F.3d at 1164) (internal alterations omitted).

The Court finds that the ALJ adequately addressed the factors stated in SSR 06-03P to withstand review in this case. First, the ALJ commented on the length of the treatment relationship between Plaintiff and Dr. Runyan, noting that Dr. Runyan had only been treating Plaintiff for "a few months." *AR* at 21. Second, the ALJ addressed inconsistencies between Dr. Runyan's opinions that Plaintiff was markedly limited in multiple areas with the other evidence in the record, including Plaintiff's treating sources and Plaintiff's activities of daily living. *AR* at 21. Finally, the ALJ identified other factors that tended to refute Dr. Runyan's opinion – namely, that Plaintiff's "grief and severe depression may be colored by the recent death of her brother." *AR* at 21.

Plaintiff argues that the ALJ's reasons for discounting Dr. Runyan's opinions are either improper or unsupported by the record. First, Plaintiff argues that her primary care physician diagnosed anxiety and depression, belying the ALJ's statement that "other treating sources do not comment about depression." *Doc. 18* at 13. Plaintiff is correct that her primary care physician prescribed Effexor for depression as early as 2010. *See, e.g.*, *AR* at 313. However, the Commissioner correctly points out that besides this prescription, the record is devoid of evidence supporting the marked

15

limitations Ms. Runyan found. For one thing, depression was not Plaintiff's chief complaint in any of the records that she cites. *See AR* at 313, 318, 320, 322, 324, 325, 327, 329. Beyond the prescription, these records are also devoid of any substantive discussion of Plaintiff's depression. *Id.* Moreover, her mood was noted as "good" or "happy" in many of these same records. *AR* at 317, 318, 320, 322, 327, 329. In sum, while slightly inaccurate, the ALJ's reasoning is supported by substantial evidence and the Court will not remand on this basis.

Plaintiff also maintains that the ALJ wrongfully substituted her lay opinion for that of Dr. Runyan when she stated that Plaintiff's "grief and severe depression may be colored by the recent death of her brother." *Doc. 18* at 14; *AR* at 21. However, the ALJ's statement in this regard was entirely consistent with the letter Dr. Runyan wrote on Plaintiff's behalf, which opens by stating that Plaintiff "came to me with intense grief which had manifested as severe depression due to the recent death of her brother" and which contains an entire paragraph discussing Plaintiff's close relationship with her brother. *See AR* at 533. Nonetheless, Plaintiff argues that it was generally wrong for the ALJ to attribute her depression to the death of her brother in light of prior treatment with an antidepressant. *Doc. 23* at 6. This argument misunderstands the ALJ's reasoning. The ALJ did not attribute Plaintiff's depression *solely* to the death of her brother. Rather, the ALJ's statement merely points out that the *severe* depression Plaintiff was experiencing in October 2013 was likely related to the death of her brother, and was not indicative of Plaintiff's overall functioning for the relevant time period. Support for this notion is found in the ALJ's acknowledgement and decision to give great weight to Dr. Wynne's December 2012 diagnosis of depression and anxiety, identification of Plaintiff's

depression as a severe impairment at Step Two of the sequential evaluation process, and discussion of whether Plaintiff's mental impairments met a listing at Step Three. *AR* at 14.

The Court can follow the ALJ's reasoning for affording little weight to Dr. Runyan's opinions and for refusing to include the marked limitations she identified in Plaintiff's RFC, and the ALJ's reasons are supported by substantial evidence. Therefore, the Court will not reverse on this ground.

4. Function-by-Function Analysis

Plaintiff next asserts a structural error in the formulation of her RFC, arguing that "SSR 96-8p requires the ALJ to consider each of the seven strength demands separately" and that the ALJ's failure to consider and describe her abilities to sit, stand, walk, lift and carry constitutes reversible error. *Doc. 18* at 15-16.

In the past, strict adherence to SSR 96-8p's requirement of a function-by-function analysis in determining the RFC provided the reviewing court with a well-established and straightforward method for assessing whether the RFC was based on substantial evidence and if it supported the ALJ's conclusions as to the level of work, if any, the claimant could undertake. "The concern [was] that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" SSR 96-8p, 1996 WL 374184, at *4. Thus, in the absence of a mandatory and proper function-by-function analysis, the case was automatically remanded for the ALJ to perform that necessary assessment. *See, e.g.*, *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished).

17

However, the Tenth Circuit recently held that omission of the formulaic analysis set forth in SSR 96-8p can be harmless provided that the ALJ's decision discusses and addresses any pertinent limitations and is otherwise supported by substantial evidence. *Hendron*, 767 F.3d at 954-57 ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). This new "harmlessness" exception to the function-by-function analysis now requires the reviewing Court to engage in the arduous and time-consuming task of combing the ALJ decision and evidence of record to assure that no limitations have been omitted from the RFC. However well-intentioned, the *Hendron* exception shifts the ALJ's duty to support her conclusions with a proper analysis to the district court which must now assure that all relevant limitations were addressed. Having conducted this extensive review as it must, the Court concludes that any structural error in the analysis in this case is harmless. *Id.* at 957.

"RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251 at *2. It is a reflection of "the maximum amount of each work-related activity the individual can perform," and, in reaching it, an ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, *7. Ordinarily, an ALJ may not simply express an RFC in terms of the exertional categories of "sedentary," "light," "medium" or "heavy" levels of work. Rather, in order to insure accuracy, "[t]he RFC assessment must first identify the individual's functional limitations

or restrictions and assess his or her work-related abilities on a function-by-function basis," including the "seven strength demands" of sitting, standing, walking, lifting, carrying, pushing and pulling. *Id.* at *1, 5; (citing 20 C.F.R. § 404.1545; 10 C.F.R. § 416.945). However, the Tenth Circuit has made clear that an ALJ's omission of this formulaic analysis is harmless so long as it is apparent that the ALJ considered the applicable strength demands. *See Hendron* 767 F.3d at 957.[3]

In *Hendron*, the plaintiff argued that the ALJ's omission of the function-by-function assessment resulted in his omission of her inability to sit for six hours during an eight-hour workday when formulating her RFC. *Id.* at 956. Had the ALJ engaged in the proper analysis, she argued, he would have not found that she retained the capacity to perform a full-range of sedentary work. *Id.* The Tenth Circuit acknowledged the importance of a formal articulation of an applicant's strength demands in some cases. *Id.* (discussing SSR 96-8p, 1996 WL 374184 at *3). The court concluded, however, that the omission was harmless in Ms. Hendron's case because the ALJ considered the medical evidence she relied on and discounted it, noting that the records revealed that the plaintiff reported being "pain free" during the relevant time period. *Id.* at 957. The Tenth Circuit compared the ALJ's findings with the regulatory definition of sedentary work and concluded that the ALJ's RFC analysis sufficiently captured the plaintiff's ability to sit, because, although it was presented in narrative form, it demonstrated that "the ALJ did not overlook [the plaintiff's] problems with sitting; [but, rather] he found that the evidence did not support any limitation on her ability to sit. . . ." *Id.* The ALJ's analysis in this case is analogous.

---

[3] Plaintiff attempts to distinguish *Hendron* on the basis that the relevant period being examined there was "a mere two months" whereas "the time frame here spans more than a year and a half." *Doc. 23* at 7-8. The Court is unclear why that distinction should make a difference in its analysis, however.

Here, the ALJ exhaustively discussed and assessed Plaintiff's testimony, function reports, and medical records, and she ultimately concluded that Plaintiff can perform sedentary work with restrictions. The ALJ's discussion of Plaintiff's medical records included those of Dr. Norcross, who offered opinions on Plaintiff's abilities to perform all of the strength demands she now complains the ALJ ignored. *Compare AR* at 18 *with AR* at 362. Specifically, Dr. Norcross opined that Plaintiff can sit for six hours out of an eight-hour workday, stand and walk at least two hours in an eight-hour workday, occasionally lift and carry ten pounds, and frequently lift and carry less than ten pounds. *Id.* at 362. These abilities are consistent with the demands of sedentary work. *See* SSR 83-10, 1983 WL 31251 at *5 (stating that sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). As such, the ALJ's narrative discussion of Plaintiff's RFC is consistent with that at issue in *Hendron*.

And, as in *Hendron*, Plaintiff points to no medical evidence showing that her impairments preclude her from working consistent with the RFC the ALJ formulated. This lack of medical evidence is fatal to her claim. *Wall*, 561 F.3d at 1067-8; *Rose v. Colvin*, 634 F. App'x 632, 637  (10th Cir. 2015) (unpublished) ("Ms. Rose points to no medical evidence indicating that her obesity resulted in functional limitations. . . . Therefore, the factual record does not support Ms. Rose's position that her obesity . . . precludes her from performing a limited range of sedentary work.") (citation omitted).

5.   Obesity

Plaintiff's final claim of error related to her RFC is that the ALJ failed to assess

the impact of her obesity. *Doc. 18* at 16-17. Obesity must be considered in assessing a

claimant's RFC as it "can cause a limitation of function." *See* SSR 02-1p, 2002 WL

34686281 at *6; *id.* at *7 ("When we identify obesity as a medically determinable

impairment . . . we will consider any functional limitation resulting from the obesity in the

RFC assessment[.]"). "[T]he ALJ may 'not make assumptions about the severity or

functional effects of obesity combined with other impairments' but instead must

'evaluate each case based on the information in the case record.'" *Smith v. Colvin*, 625

F. App'x 896, 899 (10th Cir. 2015) (unpublished).

The ALJ found Plaintiff's obesity to be a severe impairment at Step Two. *AR* at

14. In discussing Plaintiff's obesity, the ALJ cited SSR 02-1p and acknowledged that

she considered the effects of Plaintiff's obesity in assessing her RFC. *AR* at 14. The

ALJ then discussed Plaintiff's obesity at Step Three. *AR* at 16. In this discussion, the

ALJ noted SSR 02-1p's application to the RFC assessment and concluded that "[i]n the

instant matter, claimant's obesity does not indicate any limits when standing alone.

However, when taken in combination with the other impairments, it counsels in favor of

the postural and exertional limits indicated herein." *AR* at 16. The ALJ then directly

discussed Plaintiff's obesity during the RFC assessment, noting that:

> The claimant testified that her weight is 300 pounds. She has gained 80
> pounds since 2008. However, there is no compelling medical evidence
> in the record that directly attributes the claimant's obesity to a specific
> medically determined condition. There is no apparent clinical evidence
> in the record that attributes her obesity as affecting a weight-bearing
> joint or the cardiovascular system. In light of the above evidence, and
> pursuant to SSR 02-01p, it is my conclusion that the claimant's obesity
> does not present an adverse impact on her other medically determined

> impairments and, specifically, on her capacity to perform sedentary
> work.

*AR* at 20.

This discussion belies Plaintiff's claim that the ALJ did not consider the effects of her obesity in formulating her RFC. *See, e.g.*, *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (holding that the ALJ properly considered the claimant's obesity in discussing her lack of marked arthritic pain, joint deformity, or musculoskeletal impairment). More importantly, Plaintiff points to no evidence of record indicating that her obesity further limited her ability to perform the restricted range of sedentary work that the ALJ found. *See e.g.*, *id.* ("Claimant does not discuss or cite to medical evidence about other areas which were impacted by her obesity."); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (unpublished) ("Moreover, Mr. Arles does not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work."); *Rose*, 634 F. App'x at 637 ("Ms. Rose points to no medical evidence indicating that her obesity resulted in functional limitations."); *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (unpublished) ("Ms. Smith has not shown that her obesity alone, or in combination with other impairments, resulted in any further limitations.").

Plaintiff relies on *DeWitt v. Astrue*, 381 F. App'x 782, 784-86 (10th Cir. 2010) (unpublished), arguing that "[a] limitation to sedentary work is not an adequate exertional consideration for Level III obesity." *Doc. 18* at 17. While the Tenth Circuit indeed reversed the ALJ in *DeWitt*, it was not for this reason. Rather, there the ALJ mistakenly relied upon a doctor's opinion in discounting the claimant's obesity, when that doctor never discussed the claimant's obesity in the first place. *Id.* at 785. In

attempting to salvage the ALJ's opinion, the Commissioner argued that the ALJ considered the claimant's obesity by restricting her to sedentary work with restrictions. *Id.* But, as the Tenth Circuit recognized, "there [was] nothing in the decision indicating how or whether [the claimant's] obesity influenced the ALJ in setting those restrictions." *Id.* The same is not true here.

Plaintiff finally argues that she would have been considered disabled under the former listing for obesity. *Doc. 18* at 17 (citing former listing 9.09). However, as SSR 02-1p explains, the Agency deleted listing 9.09 because "the criteria in listing 9.09 did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." SSR 02-1p, 2002 WL 34686281 at *1. The ALJ in this case determined that Plaintiff's obesity does not prevent her from engaging in substantial gainful activity, and Plaintiff has cited to nothing contrary to that assertion.

### B) The ALJ's Credibility Findings are Supported by Substantial Evidence.

Plaintiff broadly argues that the ALJ's credibility conclusion is contrary to the evidence and the law. *Doc. 18* at 17. "Credibility determinations are peculiarly the province of the finder of fact and [the Court] will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The Court is not permitted to reweigh evidence, second guess, or substitute its judgment for that of the ALJ. *Wall*, 561 F.3d at 1070. Rather, this Court looks only to whether the ALJ's credibility findings are "closely and affirmatively linked" to record evidence. *Id.*

> Factors the ALJ may consider in assessing a claimant's complaints include 'the levels of [her] medication and its effectiveness, . . . the frequency of [her] medical contacts, the nature of [her] daily activities, subjective measures of credibility that are peculiarly within the judgment

of the ALJ, . . and the consistency or compatibility of nonmedical testimony with objective medical evidence.'

*Qualls v. Astrue*, 428 F. App'x 841, 845 (10th Cir. 2011) (unpublished) (quoting *Kepler*, 68 F.3d at 391) (alterations in original); *see also* 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (listing seven factors relevant to claimant's symptoms that the ALJ will consider); SSR 96–7p, 1996 WL 374186, at *3 (same). This inquiry is conducted "via a meticulous examination of the record as a whole[,]" *id.* at 1067, which includes examining "anything that may undercut or detract from the ALJ's findings[.]" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

The ALJ gave seven reasons in support of her conclusion that Plaintiff's allegations lack credibility:

> (1) Diagnostic studies and physical examinations show only mild degenerative changes of the cervical and lumbar spine.
> (2) Bilateral Knee arthroscopy was successful, and the claimant was benefiting from physical therapy. She has some residual left knee pain, but full range of motion of the knees.
> (3) After her vehicle accident, the claimant failed to attend physical therapy as prescribed by her physician.
> (4) The claimant has failed to lose weight or exercise as recommended by her physician. The claimant stated that she cannot afford a pool membership, but she does not even attempt home exercises.
> (5) Though the claimant complains of IBS symptoms, there is little mention of it, or treatment for it in the records.
> (6) The claimant has only moderate limitations in functioning as demonstrated by her GAF of 52.
> (7) Though the claimant has limitations, she is still able to drive, run errands, help with meals, and supervise three children.

*AR* at 21-22. Plaintiff takes issue with all of the ALJ's reasons except for number (5).

As to the first two, Plaintiff argues that the ALJ's reasoning was erroneous because she only needs to present evidence of a pain-producing impairment; "[s]he need not show that the *amount* of pain is supported by objective findings." *Doc. 18* at

22. While this may be true, the Tenth Circuit has affirmed negative credibility findings where medical and clinical findings are inconsistent with a claimant's allegations of disabling pain. *See Rudde*, 253 F. App'x at 774 ("The ALJ cited several reasons for discounting Ms. Rudde's allegations of total disability during the period at issue. Primary among those reasons were the medical and clinical findings that were inconsistent with Ms. Rudde's allegations. Such inconsistencies are an appropriate basis for evaluating credibility.") (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) ("in assessing Decker's credibility, the ALJ appropriately considered medical evidence that was inconsistent with Decker's claim of total disability")).

As to the third, the ALJ rightfully considered Plaintiff's failure to attend physical therapy after her car accident in assessing her allegations of disabling neck and back pain. *See Alarid*, 590 F. App'x at 793; *Johnson v. Colvin*, 640 F. App'x 770, 774 (10th Cir. 2016) (unpublished). Plaintiff argues that the ALJ should have considered why she failed to attend therapy, claiming that the physical therapy made her pain worse and that she could not start it in 2013 due to the death of her brother. *Doc. 18* at 19. However, the records that Plaintiff relies on do not support her argument that physical therapy made her *neck and back* pain worse. *See AR* at 423, 527. The first relates to follow-up for her *knees*, and states that she "did not complete her full prescribed course of therapy, secondary to having back issues from a car accident as well as a family illness and she was traveling. Despite this, she states that, when she was doing therapy, her pain was actually worsened." *AR* at 423. This record relates to Plaintiff's *knee* pain, not her neck and back pain, and indicates that she did not complete her course of therapy *for her knees* because it only increased her pain. *AR* at 423.

The second record makes no mention of an increase in Plaintiff's neck or back pain due to physical therapy, because, as Plaintiff admits, she did not attend therapy due to her brother's death. *AR* at 527. While Plaintiff's brother's death is certainly a valid reason for missing therapy initially, Plaintiff's doctor continued to recommend physical therapy, and there is no indication that she ever followed through with this recommendation. *AR* at 527 ("I would like to see her try physical therapy. I don't think there is anything surgical from that standpoint but I would like to see her complete this and see how she does."). As such, the ALJ did not err in relying on Plaintiff's failure to attend physical therapy in assessing her credibility as to her neck and back complaints.

Plaintiff argues that the ALJ's fourth reason for finding her not credible, Plaintiff's failure "to lose weight or exercise as recommended by her physician," *AR* at 21-22, is contrary to SSR 02-1p and circuit case law outside of the Tenth Circuit. *Doc. 18* at 19. Indeed, SSR 02-1p does discourage reliance on failure to follow prescribed treatment to deny benefits in cases of obesity. *See* 2002 WL 34686281 at *9 ("We will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits.").[4] Even assuming that the use of this factor in the instant case was improper, the balance of the ALJ's credibility analysis is supported by substantial evidence. Therefore, the Court will not reverse on this ground. *See Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal

---

[4]  However, on at least on occasion, the Tenth Circuit has affirmed the use of this consideration in assessing the credibility of allegations of disabling obesity. *See Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (unpublished) ("The ALJ considered Best–Willie's obesity impairment but concluded that complaints of disability due to obesity were not credible because Best–Willie repeatedly ignored medical advice to lose weight."). The Court is unaware of any other such decisions by the Tenth Circuit.

household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record.").

Plaintiff next argues that the ALJ's fifth negative credibility finding, that she "has only moderate limitations in functioning as demonstrated by her GAF[5] of 52," constitutes legal error and is contrary to Dr. Runyan's finding of some marked limitations resulting from Plaintiff's depression. *Doc. 18* at 20. Plaintiff does not explain how the ALJ committed legal error by contrasting her GAF score with her allegations of extreme limitations; and, contrary to Plaintiff' assertion, a similar rationale was affirmed in *McDonald v. Astrue*, 492 F. App'x 875, 879 (10th Cir. 2012) (unpublished) (where the ALJ found no objective support for the claimant's contentions of extreme limitations, noting her GAF score of 52, which like Plaintiff's, is within the moderate range). Furthermore, the Court has already discussed the ALJ's treatment of Dr. Runyan's opinion and affirmed her decision to assign that opinion little weight. As she rejected Dr. Runyan's opinion, it was the ALJ's prerogative to assess Plaintiff's allegations of disabling symptoms in light of all of the evidence in this case, including Plaintiff's GAF score as found by Dr. Wynne, whose opinion the ALJ assigned great weight.

Plaintiff finally argues that the ALJ erred in concluding that "[t]hough the claimant has limitations, she is still able to drive, run errands, help with meals, and supervise three children." *Doc. 18* at 21. The Court is not persuaded. First, as discussed above, the applicable regulations make clear that an ALJ may consider an individual's daily

---

[5] "The GAF is a subjective rating of 'the clinician's judgment of the individual's overall level of functioning,' based on a scale of 1–100, with 100 being the highest level of functioning. . . . A GAF of 51–60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)' or 'moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *McDonald v. Astrue*, 492 F. App'x 875, 879 (10th Cir. 2012) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (Text Rev. 4th ed. 2000) at 32-34).

activities in assessing allegations of disabling pain. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) and 20 C.F.R. § 416.929(c)(3)(i); SSR 96-7p, 1996 WL 374186; *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993). Second, Plaintiff has not shown that the ALJ's assessment of her daily activities is substantially inaccurate, and the Court has already concluded that the ALJ properly relied upon evidence of her daily activities in discounting Plaintiff's allegations of disabling fatigue.

Nonetheless, Plaintiff argues that the "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Doc. 18* at 20 (quoting *Thompson*, 987 F.2d at 1490). While this may be true, the Tenth Circuit has affirmed negative credibility findings in cases with facts mirroring those present here. *See Wilson*, 602 F.3d at 1146; *see also Newbold*, 718 F.3d at 1267 (affirming where the claimant could independently care for her personal needs, do dishes, vacuuming, cooking, texting friends, using a computer, driving, grocery shopping, reading, watching television, visiting with friends, and attending church); *see also Qualls*, 428 F. App'x at 847 (affirming where the claimant could care for her family, do household chores, girl scouts and sewing). In contrast, the cases Plaintiff relies on, *Thompson* and *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011), are inapposite because the claimants there indicated that they could effectively do nothing. *See Thompson*, 987 F.2d at 1489; *Krauser*, 638 F.3d at 1333 ("Mr. Krauser specifically testified that he did not sweep floors, did not do any cooking, only put dishes in the dishwasher, could just make a bed 'halfway,' and was unable to pick up things off the floor."). In sum, Plaintiff has failed to demonstrate that the ALJ's adverse credibility finding related to her activities of daily living is not supported by substantial evidence.

### C) *The Vocational Expert's Testimony was Consistent with the Dictionary of Occupational Titles.*

Plaintiff's last argument is that the jobs that the VE testified that she can perform are inconsistent with her RFC, which limits her exposure to moving machinery. *Doc. 18* at 21. Specifically, Plaintiff points out that the jobs of lens inserter and nut sorter are both performed in front of a conveyor belt.

An ALJ has an "affirmative responsibility" to clarify possible conflicts between VE testimony and the DOT and to elicit reasonable responses for any discrepancy. SSR 00-4p, 2000 WL 1898704 at *4. Both of these jobs are performed in front of a conveyor belt. *See* DOT 521.687-086, 1991 WL 674226 (nut sorter); DOT 713.687-026, 1991 WL 679273 (lens inserter). Intuitively, the constant use of a conveyor belt in these jobs would seem to violate the proscription "to avoid concentrated exposure to moving machinery." Indeed, at least one court has so held. *See Herron v. Astrue*, No. 3:09-CV-2-WGH-RLY, 2010 WL 126187, at *4 (S.D. Ind. Jan. 8, 2010) ("the job of nut sorter requires exposure to conveyor belts which does not conform to Plaintiff's RFC which includes "no exposure to moving machinery" and was therefore "clearly a conflict in the VE's testimony and the DOT"); *see also Littlejohn v. Astrue,* No. ED CV 07-1614-SH, 2009 WL 700031, at *7 (C.D. Cal. 2009) ("Even if the conveyer belt is considered moving machinery—as the VE found—the VE determined that plaintiff could perform her past work as a vegetable sorter 'because a conveyor belt is not particularly fast-paced. It's moving machinery, but . . . the vegetable sorter position would be appropriate.'").

However, in the description of these jobs under the "Moving Mech. Parts" section, it is noted "Not Present – Activity or condition does not exist." *See id.* Other

courts have relied on this description to find that such positions using a conveyor belt do not necessarily implicate exposure to moving machinery; *Lowery v. Colvin*, No. 14-CV-310-JHP-FHM, 2015 WL 5775218, at *5 (N.D. Okla. May 11, 2015), report and recommendation adopted in part, rejected in part, No. 14-CV-310-JHP-FHM, 2015 WL 5775212 (N.D. Okla. Sept. 29, 2015). The Court has found no Tenth Circuit case on point.

Yet even assuming that the above identified jobs would impose the prohibited exposure to moving machinery, the VE identified a third occupation that does not involve working around conveyor belts, *see* DOT 669.687-014, 1991 WL 686074 (dowel inspector), for which the VE testified that there are nationally 160,000 jobs available and 1,200 regionally. *AR* at 45. Thus, any error in identifying conveyor belt jobs  is rendered harmless. *Stokes v. Astrue,* 274 F. App'x. 675, 684 (10th Cir.2008) (finding only 152,000 jobs in the national economy sufficient); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (available "jobs in the national economy is a legally 'significant' number.").

**IV.    Conclusion**

Because Plaintiff fails to demonstrate that the ALJ committed reversible error in this case, the Commissioner's decision will be affirmed.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 18)* is **denied**.

_____

UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent of the Parties